Suzanne SHERER, et al.

v.

Ray Allen LINGINFELTER, et al.

Supreme Court of Tennessee, at Knoxville.

July 14, 2000.

Arthur G. Seymour, Jr., James E. Wagner, Knoxville, Tennessee, for the appellant, United Services Automobile Association.

Jess D. Campbell, Knoxville, Tennessee, for the appellees, Suzanne Sherer and husband, Charles Sherer as parents and natural guardians of Teal Sherer.

## OPINION

HOLDER, J., delivered the opinion of the court, in which ANDERSON, C.J. and DROWOTA, BIRCH, and BARKER, JJ., joined.

We granted this appeal to determine whether an insurer's right of subrogation under Tenn.Code Ann. § 56–7–1204 extends to damages for enhanced injuries received by the insured as the result of another tortfeasor's actions. We conclude that the subrogation right of the insurer is limited to the injuries for which the insurer has made payment. We affirm the Court of Appeals.

Teal Sherer sustained serious injuries as the result of a one-car accident. Ms. Sher-

er was a passenger in the vehicle involved in the accident. Ray Linginfelter was operating the vehicle at the time of the accident. The plaintiffs, Teal Sherer and her parents, Suzanne Sherer and Charles T. Sherer ("Sherers"), initiated suit against Mr. Linginfelter and the owner of the vehicle, Linginfelter Landscaping, Inc. ("Linginfelters"). The Linginfelters' insurance carrier entered into a settlement agreement with the plaintiffs. The agreement provided that $175,000 would be paid directly to the Sherers and that another $125,000 would be contributed toward a structured settlement.

Teal Sherer was an insured under both her father's primary insurance policy and her father's umbrella insurance policy. Both policies were underwritten by United Services Automobile Association ("USAA") and provided uninsured motorist coverage for Teal Sherer. The primary policy provided uninsured/underinsured motorist coverage in the amount of $300,000 per person. The umbrella policy increased the coverage limits to $1,000,000. USAA settled the Sherers' underinsured motorist claim for a total of $700,000.

The Sherers then filed a product liability action against General Motors Corporation ("GM"), the manufacturer of the vehicle in which Teal Sherer was a passenger at the time of the accident. The Sherers alleged in their complaint that GM's use of a lap restraint rather than a lap and shoulder belt combination resulted in enhanced injuries to Teal Sherer. The action against GM sought $30,000,000 in compensatory and punitive damages.

The Sherers filed a Complaint for Declaratory Judgment alleging that USAA did not have a right of subrogation against any recovery that the Sherers might receive from GM. The Sherers argued that GM was liable for additional injuries to Teal Sherer above and beyond those caused by the driver's negligence. The suit against GM was ultimately settled for an undisclosed amount. As to the subrogation issue the trial court held:

[T]he settlement agreement by General Motors is, while for the same injury, not for the same portion of that injury for which payment was made or settlement was made by USAA on behalf of the driver of the vehicle; that these are separate, even though resulting in one injury, and that the subrogation would not be for this portion of the injury attributable to General Motors.

The Court of Appeals affirmed the trial court's decision. We granted review.

## ANALYSIS

USAA argues that it is entitled to subrogate against any recovery the Sherers may obtain as a result of the product liability action against GM. The primary insurance policy issued by USAA provided:

If we make payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right.

The umbrella policy included a similar provision providing:

With respect to damages caused by an uninsured motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident, the limit of liability under this endorsement shall be reduced by all sums paid or payable by or on behalf of persons or organizations who may be legally responsible.

Notwithstanding the above contractual language, the issue of whether USAA is subrogated to the plaintiffs' right against GM or subrogated only to the plaintiffs' right against the owner and operator of the uninsured motor vehicle is controlled by statute. *See Fleming v. Yi*, 982 S.W.2d 868, 870 (Tenn.Ct.App.1998). The law is well-established that "any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the

policy repugnant to the provisions of the statute." *Hermitage Health & Life Ins. Co. v. Cagle*, 57 Tenn.App. 507, 420 S.W.2d 591, 594 (1967).

> [Uninsured/underinsured motorist] statutes, as a matter of law, become provisions of all automobile insurance policies issued for delivery in Tennessee. Where there is a conflict between a statutory provision and a policy provision, the statutory provision must prevail.

*Fleming*, 982 S.W.2d at 870 (citations omitted). The uninsured motorist coverage provisions are codified at Tenn.Code Ann. §§ 56–7–1201, *et seq.* The stated purpose of the uninsured motorist coverage is to provide

> for the protection of persons insured thereunder who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury.

Tenn.Code Ann. § 56–7–1201(a). An "uninsured motor vehicle" is defined as

> a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made.

Tenn.Code Ann. § 56–7–1202(a). Accordingly, the coverage compensates for damages caused by owners or operators of motor vehicles who either lack insurance coverage or carry coverage insufficient to pay for the damages occasioned by their negligent operation of a motor vehicle.

■ The uninsured motorist statute establishes an insurance company's right of subrogation. The subrogation provision provides:

> In the event of payment to any person under the coverage required by this part, and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be subrogated to all of the rights of the person to whom such payment has been made, and shall be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or property damage *for which such payment is made*, including the proceeds recoverable from the assets of an insolvent insurer.

Tenn.Code Ann. § 56–7–1204(a) (emphasis added). This statutory provision provides that the insurer who makes a payment under the uninsured motorist coverage "steps into the shoes" of the person receiving the payment and may recover against any person who occasioned the payment by the insurer.

■ Taken together, the language of these statutes: 1) limits the liability of an uninsured motorist carrier to payments for damages caused by the uninsured/@underinsured motorist in the ownership, maintenance, or use of the vehicle; and 2) allows the insurer to recover from its insured only those amounts received from the person or entity causing those same damages.

USAA argues that "the subrogation statute provides for broad subrogation rights against any recovery the insured may receive." In support of its argument, USAA relies upon *Erwin v. Rose*, 980 S.W.2d 203 (Tenn.Ct.App.1998), and *Thompson v. Parker*, 606 S.W.2d 538, 540 (Tenn.Ct.App.1980). We note that *Erwin* and *Thompson* construed Tenn.Code Ann. § 56–7–1205 and did not address § 56–7–1204, the section of the uninsured motorist statute providing for subrogation. We express no opinion as to the holding of those cases, inasmuch as the construction of § 56–7–1205 is not presently before us.

In *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn.1992), this Court adopted the doctrine of modified comparative fault. The purpose of comparative fault is to assess liability in proportion to fault. *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 429 (Tenn.1996); *McIntyre*, 833 S.W.2d at 58. We have stated that "where the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributable to its fault." *Owens*, 915 S.W.2d at 430. The adoption of comparative fault rendered the doctrine of joint and several liability obsolete. *See id.; McIntyre*, 833 S.W.2d at 58. In *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684, 693–94 (Tenn.1995), we held that comparative fault principles will apply to products liability actions such as the case before us, in which the defective product did not cause or contribute to the underlying accident but did cause "enhanced injuries."[1]

In this case, the Court of Appeals correctly construed the statutory language of Tenn.Code Ann. § 56–7–1204 and applied these principles of comparative fault to hold that § 56–7–1204(a) provides that the insurer's subrogation rights are limited to the injuries for which the insurer has made payment. USAA's payments compensated the Sherers for the injuries to Teal Sherer arising from the negligence of Mr. Linginfelter, the uninsured motorist, in the operation of the vehicle. GM's payments, on the other hand, compensated the Sherers for the enhanced or additional injuries to Teal Sherer caused by the vehicle's rear seat belt system.

We agree with the lower courts that GM's payment to the Sherers compensated them for a different portion of the injuries sustained by Teal Sherer. We hold that under Tenn.Code Ann. § 56–7–1204(a)

USAA may not exercise its subrogation rights against the portion of the Sherers' recovery received from GM.

We affirm the judgment of the Court of Appeals. Costs of this appeal are taxed against USAA, for which execution may issue if necessary.

---

1. "Enhanced injuries" represent the portion of the total damages for which the manufacturer is potentially liable. *See Whitehead*, 897 S.W.2d at 694–95. In this case the claim for "enhanced injuries" is "nothing more than a claim for injuries that were actually and proximately caused by the defective product." *See e.g. id.*